OPINION
{¶ 1} Appellant, Laverne M. Lewis, appeals from the April 19, 2007 judgment entry of the Ashtabula County Court of Common Pleas granting the motion for summary judgment of appellee, Joanne Wall ("Wall"). For the reasons stated below, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} Lewis lived at Parkwood Village, 1626 East 51st Street, mobile home space No. 120, pursuant to a "lease of mobile home space." Lewis had occupied the mobile home space since December 1, 1997. Lewis renewed her contract annually. The mobile home park was operated by Wall, doing business as (dba) Parkwood Village. Pursuant to the terms of the lease agreement, Wall was responsible for the maintenance and upkeep of the common areas. Lewis, pursuant to the park rules, was responsible for "the neatness and the care and maintenance of shrubs, trees, lawns, patios, parking areas and sidewalk in their [tenant's] lot."
 {¶ 3} On October 21, 2001, Lewis was performing yard work. As she was picking up sticks in her yard, she slipped on precipitation on the ground and lost her balance. Lewis slipped near a railroad-tie retaining wall, a structure common to the Parkwood Village trailer park community. As Lewis slipped, her left foot caught behind a portion of the retaining wall. Lewis' body pitched forward, and she landed on her right ankle. Lewis suffered a fracture and dislocation of her right ankle in three places.
 {¶ 4} On June 13, 2004, Lewis filed a complaint against Wall, John Wall, and Cincinnati Insurance Companies in the Ashtabula County Court of Common Pleas seeking compensatory damages for the injuries she sustained on October 21, 2001. Lewis dismissed her complaint against John Wall, without prejudice. Subsequently, Lewis filed an amended complaint. After settlement with Cincinnati Insurance Companies on her bad faith claim, Lewis dismissed her amended complaint against Cincinnati Insurance Companies, with prejudice, on June 10, 2004.
 {¶ 5} On August 3, 2004, Wall moved for summary judgment on count one, a common-law negligence claim, and count two, a negligence claim based on a breach of *Page 3 
a statutory duty. Lewis timely replied to Wall's motion for summary judgment on September 2, 2004, and Wall filed a reply brief on October 15, 2004. The trial court issued an April 19, 2007 judgment entry granting Wall's motion for summary judgment on count one and count two of Lewis' amended complaint. From this judgment, Lewis filed a timely notice of appeal.
 {¶ 6} Since both of Lewis' assignments of error are related, we will address them together. Lewis alleges:
 {¶ 7} "[1.] The trial court erred to the prejudice of appellant in sustaining appellee's motion for summary judgment on counts one and two of appellant's amended complaint by summarily concluding that the `open and obvious' doctrine abrogated any duty of care appellee as landlord owed to appellant as tenant relative to appellant's asserted negligence, premises liability, and contract claims.
 {¶ 8} "[2.] The trial court erred to the prejudice of appellant in granting appellee's motion for summary judgment by summarily concluding that no genuine issue of material fact existed that appellee as landlord did not breach her common law, statutory and contractual duties to appellant as tenant, which proximately caused appellant's injuries, when viewing the evidentiary materials submitted by the parties, and all reasonable inferences therefrom, in a light most favorable to appellant as required by Ohio Civil Rule 56."
 {¶ 9} Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one *Page 4 
conclusion, which is adverse to the nonmoving party. Civ. R. 56(C). The standard of review for the granting of a motion for summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 10} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v.Wheeler (1988), 38 Ohio St.3d 112.
 {¶ 11} "* * * *Page 5 
 {¶ 12} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' [Dresher v. Burt,75 Ohio St.3d at 276.]" Welch v. Ziccarelli, 11th Dist. No. 2006-L-229,2007-Ohio-4374, at ¶ 40-42. (Emphasis in original.)
 {¶ 13} Wall sought summary judgment on two grounds: (1) Lewis failed to provide sufficient evidence to establish a common-law negligence and/or premises liability claim against Wall, and (2) Lewis failed to provide sufficient evidence to establish a claim based on the landlord-tenant statutes and the contractual relationship between Lewis and Wall.
 {¶ 14} Initially, we observe that, on appeal, Lewis' assignments of error presented for review allege that the trial court erred in granting summary judgment to Wall when it found that Wall did not breach her contractual duties to Lewis. However, in her brief, Lewis has failed to argue this issue and has failed to support this contention with citations to the authorities, statutes, and parts of the record upon which she relies. App. R. 16(A)(7). Therefore, we decline to review this issue or accept this contention. As a result, we will first address count two of Lewis' amended complaint, alleging a breach of the statutory duties arising from the relationship of the parties.
 {¶ 15} It is well settled that failure to perform a specific duty, which was imposed upon an individual by a legislative enactment for the protection of others, constitutes *Page 6 
negligence per se. Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, paragraph two of the syllabus. "Application of negligence per se in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff. It is not a finding of liability per se because the plaintiff will also have to prove proximate cause and damages." Chambers v. St. Mary'sSchool (1998), 82 Ohio St.3d 563, 565. (Citation omitted and emphasis in original.)
 {¶ 16} With respect to count two, Lewis alleges Wall, as landlord, violated her duties imposed by R.C. 5321.04 and R.C. 3733.10, which was the proximate cause of Lewis' injuries. While R.C. Chapter 5321 governs landlord-tenant situations, R.C. Chapter 3733 governs tenancies in a mobile home park, as in the instant case. The Supreme Court of Ohio, inSchwartz v. McAtee (1986), 22 Ohio St.3d 14, paragraph one of the syllabus, stated "R.C. Chapter 5321 does not govern the relationship between manufactured home park operators and their tenants."
 {¶ 17} In Sterling v. Stevens, 7th Dist. No. 02 JE 47, 2003-Ohio-5153, at ¶ 1-7, the appellant incorrectly argued the case as if R.C. Chapter 5321 applied; however, in Sterling, the appellant was visiting her daughter, a tenant of the mobile home park, when she slipped and fell on the leased premises. The Sterling court determined that although the appellant should have based the claim on R.C. Chapter 3733, the error was not fatal because: (1) the wording of the statutes are virtually identical, (2) "there appears to be no caselaw in Ohio addressing this statutory duty as it applies to a mobile home park operator," and (3) the Village [appellee] was not prejudiced by the error since it was able to still defend the appellant's claim. Id. at ¶ 7. Therefore, since the factors *Page 7 
enumerated by the Sterling court apply in the case sub judice, this court shall also apply analogous landlord-tenant caselaw.
 {¶ 18} R.C. 5321.04, which outlines the obligations of a landlord, states, in pertinent part:
 {¶ 19} "(A) A landlord who is a party to a rental agreement shall do all of the following:
 {¶ 20} "(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 {¶ 21} "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 {¶ 22} "(3) Keep all common areas of the premises in a safe and sanitary condition."
 {¶ 23} R.C. 3733.10, which outlines the obligations of a mobile home park operator, states, in pertinent part:
 {¶ 24} "(A) A park operator who is a party to a rental agreement shall:
 {¶ 25} "(1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety and rules of the public health council;
 {¶ 26} "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 {¶ 27} "(3) Keep all common areas of the premises in a safe and sanitary condition." *Page 8 
 {¶ 28} In entering summary judgment as to count two, the trial court addressed the three statutorily-imposed duties outlined in R.C. 5321.04(A)(1)-(3) and R.C. 3733.10(A)(1)-(3). First, Lewis argues the trial court erred in entering summary judgment with respect to R.C. 5321.04(A)(1) and R.C. 3733.10(A)(1). The trial court based its denial of Lewis' claims under this section on the lack of any "allegations or evidence of violations of such codes or rules before the Court." We agree with the reasoning of the trial court.
 {¶ 29} In Taylor v. Alexander (July 11, 1986), 11th Dist. No. 3550, 1986 Ohio App. LEXIS 7530, this court determined whether the trial court erred in entering summary judgment to a landlord when a tenant fell and injured herself in the stairwell at her apartment. In addressing whether the landlord had a duty to install a handrail pursuant to R.C. 5321.04(A)(1), this court stated:
 {¶ 30} "* * * [T]he foregoing statutory section would not apply to the present facts because appellant has not cited any applicable building, housing, health, or safety code that requires such a handrail within the interior of this apartment. In the absence of any evidence or submission demonstrating a violation of any other building, housing, health, or safety code, appellant's reliance on R.C. 5321.04(A)(1) is misplaced." Id. at *7.
 {¶ 31} This position was adopted by the Tenth Appellate District inMcDaniels v. Petrosky (Feb. 5, 1998), 10th Dist. No. 97APE08-1027, 1998 Ohio App. LEXIS 402, where the tenants alleged violations of R.C. 5321.04(A)(1)-(3). The property that the tenants rented contained a tree stump upon which the tenants' child tripped and injured himself. Id. at *1. The McDaniels court noted that the tenants did not state any applicable building, housing, health and/or safety code that required the landlord to *Page 9 
remove a tree stump. Id. at *4. Citing this court's reasoning inTaylor, the Tenth Appellate District held that summary judgment was appropriate. Id. at *14.
 {¶ 32} In the instant case, Lewis failed to provide any evidence that Wall breached any building, housing, health, or safety code. Consistent with the reasoning in Taylor and McDaniels, we conclude that the trial court did not err when it determined Lewis' claims under R.C. 5321.04(A)(1) and R.C. 3733.10(A)(1) were without merit.
 {¶ 33} Second, Lewis maintains the trial court erred with respect to the second statutory duty requiring a landlord or park operator to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." R.C. 5321.04(A)(2) and R.C. 3733.10(A)(2). Lewis claims the trial court ignored the evidentiary material submitted in her memorandum in opposition to Wall's motion for summary judgment. In determining Lewis' claims under this section to be without merit, the trial court reasoned:
 {¶ 34} "Plaintiff has not provided any evidence that her premises were not in a fit and habitable condition based on erosion and the condition of the retaining wall. * * * It does not appear that the erosion and condition of the retaining wall would be covered under the statutory sections R.C. 5321.04(A)(2) and R.C. 3733.10(A)(2), and therefore, the erosion and retaining wall are not conditions which Defendant would have a responsibility to keep in a fit and habitable condition under these statutory provisions. Even if Defendant had responsibilities to Plaintiff under the (A)(2) sections of these statutes, the Plaintiff slipped in her own yard on the lawn, due to wet leaves or dew, which is certainly not an area or condition that Defendant would have a statutory responsibility to keep fit and habitable." *Page 10 
 {¶ 35} In her brief, Lewis argues Wall had vicarious knowledge of the erosion and condition of the retaining wall; however, in order to impose liability under R.C. 5321.04(A)(2) and R.C. 3733.10(A)(2), Lewis must first establish the existence of a defect. If a defect does not exist, notice to Wall is immaterial. McDaniels v. Petrosky, 1998 Ohio App. LEXIS 402, at *5.
 {¶ 36} In order to be deemed a defect such that R.C. 5321.04(A)(2) and R.C. 3733.10(A)(2) apply, Lewis must demonstrate that the erosion around the retaining wall made the premises unfit and uninhabitable. SeeAldridge v. Englewood Village, Ltd. (July 22, 1987), 2d Dist. No. 10251, 1987 Ohio App. LEXIS 8232, at *8. "`The meaning and interpretation of the statutory phrase "fit and habitable" will not be liberally construed to include that which does not clearly fall within the import of the statute. * * *'" (Internal citation omitted.) Parks v. Menyhart Plumbing Heating Supply Co. (Dec. 9, 1999), 8th Dist. No. 75424, 1999 Ohio App. LEXIS 5904, at *12, quoting Aldridge v. Englewood Village, Ltd., at *8.
 {¶ 37} In Taylor v. Alexander, 1986 Ohio App. LEXIS 7530, at *8, this court, in affirming summary judgment in favor of the appellees, stated:
 {¶ 38} "[W]hile [the applicable statute], speaks in terms of `fitness and habitability,' appellant does not contend that the absence of a handrail made the premises unfit for human habitation. Rather, the common law warranty of habitability deals with situations where the premises contain defective wiring, heat or water shortages, vermin infestations, etc. It cannot seriously be contended that the lack of a handrail, in and of itself, renders the premises substantially or wholly uninhabitable. *Page 11 
Consequently, [this statute] cannot be used as a basis for imposing liability on appellee."
 {¶ 39} Moreover, the Second Appellate District, in Aldridge v.Englewood Village, Ltd., 1987 Ohio App. LEXIS 8232, at *7-13, found that a threshold riser of one and one-quarter inches high did not make the premises unfit or uninhabitable. The tenant, when exiting the apartment, caught her toe on the threshold, fell, and fractured her arm. Id. at *2. The Aldridge court stated:
 {¶ 40} "From the evidence presented, no statutory violation proving negligence pet [sic] se is evident. Firstly, no safety or housing code provision is alleged to have been violated. Secondly, in order to label this threshold a `defect' within R.C. 5321.04(A), such defect must render the premises unfit and uninhabitable. Fitness and habitability entails such defects as lack of water or heat, faulty wiring, or vermin infestation. * * * The court found in Taylor that a defective handrail, or even the total absence of one, did not cause the premises to be unfit or uninhabitable. The same reasoning would apply to a threshold allegedly three-quarters of an inch too high. Even if we assume the threshold to have been improperly constructed, there is no `affirmative obligation to improve the rental premises by the addition of safety measures not present when the premises are initially leased.' * * *." Id. at *7-8. (Internal citations omitted and emphasis in original.)
 {¶ 41} In an apposite case, Sterling v. Stevens, 2003-Ohio-5153, at ¶ 2-4, a mother of a tenant slipped into a hole in the ground causing her to break both of her ankles. The Seventh Appellate District affirmed the trial courts' granting of summary judgment in favor of the mobile home park and held, as a matter of law, that "an *Page 12 
indentation in the ground would not be the type of defect contemplated by the General Assembly to impose liability via R.C. 3733.10(A)(2)." Id. at ¶ 16. Moreover, the Sterling court avoided expanding the plain meaning of "fit and habitable" since it "would eliminate the distinction between the statutory phrase and `safe and sanitary.'" Id. at ¶ 16.
 {¶ 42} In the instant case, Lewis claims the erosion around the retaining wall contributed to her fall. Yet, Lewis' only contention was that the erosion made it difficult to mow and perform yard work. Clearly, based on the reasoning in Taylor, Aldridge andSterling, the condition Lewis complains of is not a defect that would render the premises unfit and uninhabitable. In view of the foregoing, the trial court was correct in determining that Wall was not liable under R.C. 5321.04(A)(2), and this argument advocated by Lewis is without merit.
 {¶ 43} Third, the statutory requirement imposed upon landlords in R.C. 5321.04(A)(3) and park operators in R.C. 3733.10(A)(3) requires them to "keep all common areas of the premises in a safe and sanitary condition." In its April 19, 2007 judgment entry, the trial court noted that pursuant to the Park Rules, signed by Lewis on October 10, 2001, the "[t]enant shall be responsible for the neatness and the care and maintenance of shrubs, trees, lawns, patios, parking areas and sidewalk in their lot."
 {¶ 44} In Sterling, the Seventh Appellate District found it significant that the indentation in the ground was located on the residential premises, not in a common area. Sterling v. Stevens, 2003-Ohio-5153, at ¶ 16. As such, the mobile home park was not required to keep that portion of the property "safe and sanitary." Id. Here, the alleged defect was located in Lewis' yard, not in the common area. As such, the trial *Page 13 
court correctly determined that Wall does not have a statutory responsibility under R.C. 5321.04(A)(3) and R.C. 3733.10(A)(3) since Lewis slipped in her own yard, and this area is not considered to be a common area of the premises.
 {¶ 45} Lewis also contends that the trial court erred in granting Wall's motion for summary judgment since the issue as to whether a statutory breach occurred is a question of fact for the jury to decide. To support this position, Lewis cites the decision of the Supreme Court of Ohio in Robinson v. Bates, 112 Ohio St.3d 17, 2006-Ohio-6362. However, this argument advanced by Lewis is without merit.
 {¶ 46} In Robinson, a tenant sued her landlord for personal injuries resulting from a fall in the driveway of the residence she rented from the landlord. Id. at ¶ 2. Approximately three to five days before the fall, a contractor was hired to repair the deteriorating retaining wall. Id. The contractor removed the retaining wall on the side of the tenant's driveway, exposing a concrete footer. Id. The tenant, although aware of the construction, stepped onto the uneven slab of the footer and injured her foot. Id.
 {¶ 47} In affirming the decision of the court of appeals, theRobinson Court noted that the record illustrated that the state of the repairs was a question for the jury. Id. at ¶ 24. However, "the Ohio Supreme Court did not hold in Robinson that all claims against a landlord for breach of a landlord's statutory duty must be submitted to a jury. Rather, the Ohio Supreme Court examined the record before it and concluded that, `(f)rom the testimony, it is clear that a jury should have been allowed to consider whether (the landlord) exercised reasonable diligence and care in (a repair) * * * or instead breached her statutory duty to repair.'" Lilly v. Bradford Invest. Co., 10th Dist. No. 06AP-1277, 2007-Ohio-2791, at ¶ 23, quoting Robinson, at ¶ 24. *Page 14 
 {¶ 48} Lewis further maintains that the trial court erred in its application of the "open and obvious" doctrine with respect to count two. In its April 19, 2007 judgment entry, the trial court determined that even if there was a statutory responsibility upon the landlord to keep all common areas safe, the "open and obvious" doctrine absolved the landlord's statutory duty.
 {¶ 49} As the Supreme Court of Ohio stated in Robinson[1]:
 {¶ 50} "The `open and obvious' doctrine does not dissolve the statutory duty to repair. * * * If the jury finds that [the landlord] breached her duty to repair and keep the leased premises in a fit and habitable condition, the `open and obvious' doctrine will not protect her from liability. If the jury finds no statutory breach, however, it still must determine whether the danger was open and obvious to [the tenant] under common-law negligence principles." Robinson,2006-Ohio-6362, at ¶ 25. (Internal citations omitted.)
 {¶ 51} Even though the trial court was incorrect in its application of the "open and obvious" doctrine with respect to an alleged breach of a statutory duty, the trial court determined that Wall did not have a statutory responsibility to Lewis under R.C. 5321.02(A)(3) and R.C. 3733.10(A)(3) since Lewis slipped in her own yard and this area is not considered to be a common area of the premises; a ruling that Lewis did not challenge on appeal. Based on the foregoing analysis, we conclude that all of Lewis' arguments with respect to count two are without merit.
 {¶ 52} While the trial court determined that Wall did not breach her statutory duty, count one of Lewis' amended complaint alleges negligence against Wall. In order to *Page 15 
establish a claim for negligence, appellant must prove: "`(1) that appellee owed a duty to appellant; (2) that appellee breached that duty; (3) that appellee's breach of duty directly and proximately caused appellant's injury; and (4) damages.'" Wike v. Giant Eagle,Inc., 11th Dist. No. 2002-P-0049, 2003-Ohio-4034, at ¶ 14, quotingKornowski v. Chester Properties, Inc. (June 30, 2000), 11th Dist. No. 99-G-2221, 2000 Ohio App. LEXIS 3001, at *7.
 {¶ 53} The trial court, in its April 19, 2007 judgment entry, stated that Wall did not owe a duty of ordinary care to Lewis since she "slipped in her own yard, due to moisture or leaves. [Lewis'] own yard is not considered to be a common area, under responsibility of [Wall]." The trial court further reasoned that even if Wall did owe a duty of ordinary care to Lewis, the testimony of Lewis reveals that "she was aware of the erosion and condition of the retaining wall the entire time she lived in the mobile home." Therefore, under count one, the trial court determined that Wall did not owe a duty of care to Lewis since the erosion and condition of the retaining wall was an "open and obvious" danger. We agree.
 {¶ 54} Although the "open and obvious" doctrine does not abrogate the statutory duties imposed on landlords, it is still viable under common-law negligence principles. Under the "open and obvious" doctrine, the owner of a premises does not owe a duty to persons entering those premises regarding dangers that are open and obvious. Sidle v.Humphrey (1968), 13 Ohio St.2d 45, 48. (Citations omitted.) See, also,Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 13. "`[T]he open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers *Page 16 
and take appropriate measures to protect themselves.'"Armstrong, supra, at ¶ 5, quoting Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644. When the "open and obvious" doctrine is applicable, it "obviates the duty to warn and acts as a complete bar to any negligence claims." Armstrong, supra, at ¶ 5.
 {¶ 55} In the instant case, Lewis was aware of the condition of the retaining wall and the surrounding area. The following deposition testimony between Lewis and Wall's attorney is illustrative of that matter:
 {¶ 56} "Q. Had the wall been there the entire time you lived there?
 {¶ 57} "A. Yes.
 {¶ 58} "Q. Now, you indicated that there was some of what you call like erosion —
 {¶ 59} "A. Yes.
 {¶ 60} "Q. — behind the retaining wall, is that correct?
 {¶ 61} "A. Yes.
 {¶ 62} "Q. I assumed that had been there for a while?
 {¶ 63} "A. Yeah.
 {¶ 64} "Q. Were you aware —
 {¶ 65} "A. The whole time I lived there, yes. It seemed to just keep, you know —
 {¶ 66} "Q. So you were aware that that condition existed, is that right?
 {¶ 67} "A. That's why I was always careful when I went over there.
 {¶ 68} "Q. You indicated to me earlier that you were being very careful as you walked around because you were aware of that condition?
 {¶ 69} "A. I had to be careful of mowing there and everything. *Page 17 
 {¶ 70} "Q. You were careful because you were aware of that condition, correct?
 {¶ 71} "A. Yes."
 {¶ 72} In addition to the above exchange, Lewis was able to observe the existing condition since she indicated in her deposition that the fall occurred during daylight hours and the weather was "pretty good." Therefore, based on the "open and obvious" doctrine, it is clear that Wall owed no duty to Lewis and, as to count one, was entitled to judgment as a matter of law.
 {¶ 73} Lastly, Lewis argues the trial court erred by concluding the sole proximate cause of her fall was her initial slip in her yard. However, the trial court did not enter summary judgment on the basis of a proximate cause analysis. With respect to count one, the trial court granted Wall's motion for summary judgment on the basis that Wall did not owe a duty to Lewis under the "open and obvious" doctrine. With respect to count two, the trial court granted Wall's motion for summary judgment on the basis that Lewis did not provide any evidence that Wall breached her statutory duties under the applicable statutes, thereby negating negligence per se. As such, since the trial court did not address the issue of proximate cause, it did not commit any error concerning this issue.
 {¶ 74} Having dispelled the arguments advanced by Lewis, we find no genuine issue of material fact exists and, therefore, Wall was entitled to a judgment as a matter of law. Accordingly, we affirm the summary judgment entered in Wall's favor.
DIANE V. GRENDELL, P.J., concurs,
MARY JANE TRAPP, J., dissents.
[1] Although Wall states that the Supreme Court of Ohio's discussion in Robinson is not controlling since it was not part of the syllabus of the case, effective May 1, 2002, S. Ct. R.Rep.Op. 1 states in part: "(B)(1) [t]he law in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes." *Page 1