[Cite as *Hanson v. Knoppe*, 2019-Ohio-5393.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| TINA MARIE HANSON | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 CAE 08 0046 |
| BRIAN R. KNOPPE, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Delaware County
Court of Common Pleas, Case No. 18 CV C
09 0485

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 26, 2019

APPEARANCES:

For Plaintiff-Appellant      For Defendants-Appellees

ANNA HINES      DAVID ORLANDINI
10 W. Broad Street      655 Metro Place South
Suite 1170      Suite 200
Columbus, OH 43215      Dublin, OH 43017

*Gwin, P.J.*

{¶1} Appellant appeals the July 11, 2019 judgment entry of the Delaware County Court of Common Pleas granting appellees' motion for summary judgment.

*Facts & Procedural History*

{¶2} On September 5, 2018, appellant Tina Hanson filed a complaint against appellees Brian Knoppe ("Knoppe"), Autumnwood Homes, Inc., Needle, LLC, and Diatom, LLC. The complaint alleged that on April 24, 2017, Knoppe and the corporate entities owned and maintained the rental property located at 2836 Beal Drive, in Columbus, Ohio, and that appellant was a tenant at the property. Appellant alleges Knoppe and the corporate defendants: negligently failed to insure the premises, including the stairs, were safe and free from all dangerous conditions and defects; negligently maintained the premises in an unreasonable and dangerous condition; breached their duty under R.C. 5321.04 to make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; and breached their duty of implied warranty of habitability.

{¶3} Appellees filed an answer to the complaint on December 6, 2018 and then filed a motion for summary judgment on June 2, 2019. Appellant filed a response on June 14, 2019. Appellees filed a reply on June 20, 2019.

{¶4} Knoppe has been the manager of the property and landlord of 2836 Beal Drive in Columbus since 2009. In his deposition, he stated that in checking for rent readiness, he and Brad Halley ("Halley") look at the flooring condition, need for painting, and complete a general evaluation of all mechanicals and note any defects that are in need of repair. Knoppe did not know if the three back wooden steps were adjusted or

repaired in any way from 2009 to April 24 of 2017. Knoppe stated Halley had the authority to make decisions as to repairs and general maintenance of the property. Knoppe testified he found out the back steps needed repaired after April 24, 2017 because he received a call from appellant telling him the stairs needed repaired. After the incident, Knoppe sent out a subcontractor to fix the steps and directed the subcontractor to coordinate with appellant to schedule and repair them. Knoppe testified that he did not do the pre-occupancy walk-through in this case, but it is his understanding from the terminology used, i.e. "set nails" and "stair caps," that it was stairs on the inside that needed repair. It would fall on Halley to see that the pre-occupancy walk-through items were repaired or completed. Knoppe does not know if the items on the pre-occupancy walk-through items were repaired in this case.

{¶5} Halley is an owner of the corporate entities that are defendants in this case. Halley did not recall specifics as to whether the back steps were repaired or changed in any way since 1997, but he doubts the steps are completely original to when the home was built in 1997. Halley stated that replacing the back steps would not require a permit because it is too small of a job. Halley did the pre-occupancy walk-through with appellant in May of 2016. After the walk-through, Halley would contact subcontractors to fix or complete work that needed done. As to the item he wrote on the list stating "set nails and stair caps and fill holes," Halley stated that because of the construction of this home as a split-level home, this note "has to do with nails that had popped slightly in what's called the cap board, which is a one-by-eight piece of wood-framed wall on that angle" three feet above the steps on the interior staircase. Halley stated if he had been referencing the back stairs on the checklist, he would have used terminology like ledger, stringer,

tread, spindle, or handrail. It is Halley's understanding that the subcontractor fixed the nails on the interior staircase. Halley does not recall appellant saying anything to him about the three back steps during the walk-through because, if she had, he would have put it on the list.

{¶6} Appellant moved into the 2836 Beal Street property as a tenant on May 20, 2016. Appellant testified on the day of the incident in April of 2017, around 5:00 p.m. or 6:00 p.m. in the evening, she was cooking dinner. The grill was outside. Before putting the food on the grill, she went down the back exterior steps to turn on and heat up the grill and then went up the steps back into the home. Upon returning to put the meat on the grill, appellant stepped outside and fell through the second stair of the three exterior back steps. After the accident, appellant was in a great deal of pain and drove herself to the emergency room. Appellant had a torn ACL and meniscus and also fractured her kneecap. Appellant underwent surgery on her meniscus and kneecap.

{¶7} Appellant does not use the back steps for any purpose other than grilling, but two of her children use the back door and steps to play outside several times per month. Appellant has a Chihuahua who used the back steps to go down to the yard to relieve itself. Appellant used the back steps approximately once or twice per month.

{¶8} Appellant testified that, prior to the incident, the steps worked, but there were one or two nails approximately half-an-inch to an inch out of the left side of the staircase. Nothing else about the stairs made appellant think they were defective. Appellant stated that, prior to the incident, the steps did not seem in a state of disrepair, did not seem dangerous, did not seem loose, and felt sturdy. Further, appellant testified the railing on the side of the staircase did not seem loose or defective.

{¶9}   Appellant testified she told the person that she walked through the property with prior to moving in the stairs were defective.   After she moved in, she did not tell anyone she thought the stairs were defective or dangerous.   The only time she told anyone about her issue with the stairs was during the pre-occupancy walk-through with Halley.  Appellant testified that Halley wrote down everything she pointed out to him.  As to the steps, appellant stated, "there was the steps in the back of the house with the nail. I had made the comment that could be dangerous for the kids, that nail."  Appellant does not recall anything she or Halley pointed out about regarding the inside stairs.  In reading the checklist, appellant believes where it says "set nails in stair caps and fill holes," it referenced the two nails on the side of the exterior stair that were sticking out.  Appellant did not submit a thirty-day, post-occupancy list of items to be addressed.  As to the items on the pre-occupancy checklist, appellant felt the items on the list were all taken care of and she was told they were all taken care of.  She went through everything on the list and felt it was addressed, except for a window.   Counsel asked appellant, "[s]o it's your testimony today that everything listed on this pre-occupancy walk-through inspection checklist * * * under the items to be addressed by the owner was – were all addressed except for that window?" and appellant responded, "Correct."  Appellant did not submit a post-occupancy checklist because she believed everything was fixed.

{¶10}   Appellant gave a phone interview with a representative from Erie Insurance after the accident in which she stated, "there was a stair bannister that was loose."  At her deposition, appellant testified that, most likely, she was talking about the exterior stair banister, although that banister was not really loose, it was worn and weathered.   Also during the phone interview, appellant stated that, during the pre-occupancy walk-through,

there were nails sticking out of the back steps and "we have kids, and I just wanted to make sure that everything was up to par, and they just looked rough to me." Appellant stated during the phone interview that the owner of the property came back and addressed the issues on the checklist and she looked at the back steps and she assumed they came out and tightened things up or did what they had to do to them to make them safe; further, that, prior to the date that she fell, the steps were not loose.

{¶11} Appellant testified that Exhibit 3 is a picture she took after the incident. Appellant circled three nails on the steps that she noticed were a problem that she asked Halley to nail in and that she checked to see if he nailed in. Appellant believes the two nails on the second/middle step were sticking out further and look to her like they were screwed in a little bit. When asked if they looked secure and whether appellees fixed what she pointed out on the pre-occupancy checklist, appellant stated, "they look secure to me" and "I would say so, yes." Appellant stated she never called Knoppe or Halley at any point before the incident about fixing the top stair and nail sticking out of the side.

{¶12} Appellant stated she was told when she went to sign the lease that the items on the pre-occupancy checklist had been taken care of. After the signing of the lease, she did not notice the nail sticking out of the back steps and testified, "No. I mean, I would have looked over them and they seemed secure to me."

{¶13} The trial court issued a judgment entry on July 11, 2019 granting appellees' motion for summary judgment. As to appellant's common law claim of negligence, the trial court noted the parties dispute whether appellant's comments regarding stairs related to the interior or exterior staircases. The trial court found that, even with this dispute, there are no genuine issue of material fact because, regardless of whether appellant's

complaints to appellees were in reference to the interior stairs or the exterior stairs, her specific complaint was not related to the safety or functionality of the steps themselves, or to any defects in the way in which either staircase was constructed; instead, the evidence indicates appellant's concern was that the protruding nails might pose a danger to the children playing nearby. The trial court cited appellant's testimony that, during the eleven months between her moving in and her fall, the exterior stairs felt sturdy; she did not believe they were in disrepair; and she and her family regularly used the stairs. The trial court additionally noted appellant's concern was about nails on the top stair, rather than nails or other conditions affecting the middle stair that ultimately collapsed.

{¶14} The trial court was not persuaded by appellant's argument that the protruding nails themselves were an indication the steps could fail. The trial court concluded appellant did not raise a genuine issue of material fact that appellees had notice that the middle step of the exterior staircase was defective, or that her fall and injuries were proximately caused by appellees' breach of duty to effect that repair.

{¶15} With regards to appellant's claim pursuant to R.C. 5321.04(A)(1), the trial court found appellant failed to establish appellees knew the middle step of the exterior stairs was in need of repair.

{¶16} As to appellant's breach of warranty of habitability claim, the trial court found that while the building code requires stairways to be safe, it does not eliminate the requirement of notice to the landlord of a defect. The trial court additionally found a defective condition of the exterior staircase does not rise to the level of uninhabitability because the house could still be lived in, with only ingress and egress from the rear of the house being affected.

{¶17}  Appellant appeals the July 11, 2019 judgment entry of the Delaware County Court of Common Pleas and assigns the following as error:

{¶18}  "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS-APPELLEES ON PLAINTIFF-APPELLANT'S COMMON LAW NEGLIGENCE CLAIM.

{¶19}  "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUGDMENT IN FAVOR OF THE DEFENDANTS-APPELLEES ON PLAINTIFF-APPELLANT'S STATUTORY CLAIM.

{¶20}  "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS-APPELLEES ON PLAINTIFF-APPELLANT'S BREACH OF WARRANTY OF HABITABILITY CLAIM."

*Summary Judgment Standard*

{¶21}  Civ.R. 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being

entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶22} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶23} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶24} In her first assignment of error, appellant argues the trial court erred in granting appellees' motion for summary judgment on her common law negligence claim. At common law, a landlord is charged with a general duty to exercise reasonable care to keep the premises in a reasonably safe condition. *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1982). A common law negligence claim requires a

showing of: (1) a duty owed; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 733 N.E.2d 1018 (2002). Determination of whether a duty exists is a question of law for the court to decide, and therefore is a suitable basis for summary judgment. *Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989).

{¶25} A landlord cannot be held liable for negligence unless he has "knowledge of both the source of the danger and of the fact that the defect was dangerous." *Shump v. First Continental Robinwood Assoc., Ltd.*, 71 Ohio St.3d 414, 644 N.E.2d 291 (1994). The landlord is excused from liability if "he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000). In the absence of actual or constructive knowledge, a landlord is not liable. *Id.*

{¶26} Though the parties dispute whether appellant's comments to Halley related to the interior or exterior staircase, for purposes of summary judgment, viewing the evidence in a light most favorable to appellant, we will assume her comments related to the exterior staircase.

{¶27} Appellant contends there is a genuine issue of material fact regarding whether appellees had notice that the middle step of the exterior staircase was in a defective condition. Specifically, that appellees had actual knowledge of the defective steps because during the pre-occupancy walk-through, appellant informed Halley that nails were sticking out of two of the three exterior wooden steps. We disagree with appellant.

{¶28} First, appellant's complaint to Halley regarding the exterior steps was not related to the functionality or safety of the steps themselves; rather, her concern was that the nails might pose a danger to her children when they were playing. Appellant testified during her deposition that she told Halley the steps in the back could be dangerous for the children with the nail. In her phone interview with the insurance representative, appellant stated she was concerned about the nails sticking out of the back steps because she had kids and it looked "rough."

{¶29} Second, appellant testified that the only time she notified appellees about her issue with the exterior steps was during the pre-occupancy walk-through. The actual notice requirement is not met by appellant's discussion with Halley during the pre-occupancy walk-through because appellant stated that, subsequent to the walk-through, the issues with the steps were fixed. Appellant testified the steps did not seem dangerous or loose, and they felt sturdy and secure to her. Appellant stated she went through the items on the pre-occupancy checklist and she felt the items on the list were taken care of and addressed, except for an issue with a window. Appellant testified she did not submit a post-occupancy list because she believed everything was fixed and that appellees fixed what she pointed out on the checklist. Appellant stated that, after she signed the lease, she did not notice any nails sticking out the back steps. Appellant testified she "would have looked over them" and they "seemed secure to me." When asked whether appellees fixed what she pointed out on the pre-occupancy checklist, appellant stated, "I would say so, yes."

{¶30} In the absence of actual knowledge of the defective steps, appellant argues Halley had constructive notice the steps were defective because if Halley saw the

exposed nail heads on the exterior steps, he should have known the steps were unsafe, as he is experienced in matters of construction. In order to charge appellees with constructive knowledge, "it must appear that such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of potential danger." *Beebe v. Toledo*, 168 Ohio St. 203, 151 N.E.2d 738 (1958).

{¶31} In this case, appellant used the steps for eleven months, approximately once or twice per month, and never noticed any issues with the steps. Appellant's children also used the steps several times per month, and appellant let the family dog outside via the back steps. Prior to the incident and on the day of the incident, appellant walked up and down the steps in order to heat the grill. During the time prior to the incident, the steps did not seem loose or dangerous to appellant; rather, they felt sturdy and seemed secure to her prior to her injury. Accordingly, appellees are not charged with constructive knowledge because the nuisance did not exist in a manner that it could or should have been discovered and there was no evidence as to how long the condition existed since appellant testified the steps were fixed after the walk-through. See *Callentine v. Mill Investments, LLC*, 5th Dist. Tuscarawas No. 2017 AP 06 0014, 2017-Ohio-8634 (finding no constructive knowledge when the appellant testified the alleged defect caused him no concerns, and he walked over the sidewalk several times without noticing a problem); *Renzi v. Hillyer*, 11th Dist. Lake No. 2012-L-041, 2012-Ohio-5579 (finding no constructive knowledge when, prior to the accident, the appellant used the

steps on a regular basis and never noticed any issues with the stairs; thus, there was no evidence the stairs showed any signs of a defect).

{¶32} Upon our review of the record, we agree with the trial court that appellant has not established appellees had actual or constructive notice of the alleged defect. Accordingly, the trial court did not err in granting summary judgment on appellant's common law negligence claim. Appellant's first assignment of error is overruled.

## II. & III.

{¶33} In her second and third assignments of error, appellant argues the trial court erred in granting summary judgment for appellees on her statutory negligence claims. Appellant contends appellees violated R.C. 5321.04(A)(1) when they failed to insure the back wooden steps complied with Section 4525.03 of the Columbus Building Code, which requires every interior and exterior stairway and porch to be constructed so as to be safe to use and capable of supporting a normal load. Appellant additionally argue appellees violated R.C. 5321.04(A)(2) by breaching the implied warranty of habitability.

{¶34} A landlord who is party to a rental agreement must comply with the requirements of R.C. 5321.04(A), commonly referred to as the Landlord-Tenant Act. Pursuant to R.C. 5321.04(A), the landlord who is a party to a rental agreement shall: "(1) [c]omply with the requirements of applicable building * * * codes that materially affect health and safety; (2) [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; and (3) [k]eep all common areas of the premises in a safe and sanitary condition."

{¶35} A landlord's violation of the duties imposed by R.C. 5321.04(A) constitutes negligence per se. *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d

1195.  However, negligence per se does not mean the same thing as liability per se.  *Sikora v. Wenzel*, 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000).  In addition to negligence per se, "proximate cause for the injuries sustained must be established.  Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord."  *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1981).   A landlord "will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation."  *Sikora v. Wenzel*, 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000).

{¶36}  Negligence per se does not dispense with appellant's obligation to prove the landlord's breach was the proximate cause of the injury and that the landlord had actual or constructive notice of the condition causing the statutory violation.

{¶37}  Pursuant to the analysis in our disposition of appellant's first assignment of error, we find there is no genuine issue of material fact that appellees did not have actual or constructive notice of the alleged defect.  Accordingly, the trial court did not err in granting summary judgment on appellant's statutory claims.  Appellant's second and third assignments of error are overruled.

{¶38}  Based on the foregoing, appellant's assignments of error are overruled.

{¶39}  The July 11, 2019 judgment entry of the Delaware County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur