[Cite as *Lagunzad v. Parma Estates, L.L.C.*, 2025-Ohio-1368.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PATRICK LAGUNZAD, ET AL.,                    :

    Plaintiffs-Appellants,          :

                                 No. 114260

    v.                              :

PARMA ESTATES LLC, ET AL.,                   :

    Defendants-Appellees.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:**  April 17, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-992911

---

### *Appearances:*

Randolph R. Roth, *for appellants.*

Mansour Gavin LPA, John W. Monroe, Kathryn E. Weber, and Natalie M. Browning, *for appellees* Parma Estates MHP, LLC and ODC Homes 6 LLC.

Wilson Elser Moskowitz Edelman & Dicker, LLP, Andrew Bokeno, and Geoffrey A. Belzer, *for appellees* Parma Estates LLC and Heartland Living LLC.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiffs-appellants Patrick Lagunzad ("Patrick") and Charles Lagunzad ("Charles") (collectively "the Lagunzads" or "appellants") appeal the trial court's orders that granted summary judgment in favor of defendants-appellees Parma Estates LLC, Parma Estates MHP, LLC ("Parma Estates MHP"), ODC Homes 6 LLC ("ODC Homes"), and Heartland Living LLC ("Heartland") (collectively "appellees").

{¶ 2} The Lagunzads executed a "Manufactured/Mobile Home Purchase Agreement" ("purchase agreement") for the purchase of a manufactured home from Parma Estates LLC. The Lagunzads also executed a "Homesite Lease Agreement" ("lease agreement") with the same entity to lease lot 120 in the Parma Estates manufactured home community ("Parma Estates" or "park") located on Brookpark Road in Cleveland, Ohio. From July 2020 through May 19, 2022, Parma Estates LLC managed Parma Estates. On May 19, 2022, Parma Estates LLC conveyed its interests in Parma Estates to Parma Estates MHP, and Parma Estates MHP assumed management responsibilities of the park and lease agreements including the Lagunzads' lease agreement for lot 120. Heartland held title to the Lagunzads' manufactured home before it was purchased by appellants. ODC Homes sells manufactured homes, but they did not sell the Lagunzads their manufactured home.

{¶ 3} On February 15, 2024, the Lagunzads filed a complaint against appellees alleging numerous causes of action stemming from the purchase

agreement, lease agreement, and actions taken by neighbors and employees of the appellees. [1]

**{¶ 4}** For the following reasons, we affirm in part and reverse in part the trial court's grant of summary judgment and remand for proceedings consistent with this opinion.

**Factual and Procedural History**

**{¶ 5}** The Lagunzads moved into their manufactured home in July 2020, while waiting to secure financing to purchase the home. Prior to July 2020, the Ohio Division of Civil Compliance inspected the home and determined it passed all inspections for occupancy.

**{¶ 6}** On December 4, 2020, Parma Estates issued a letter to Patrick listing outstanding repairs to be completed on his home within 90 days of the letter. The listed repairs included elimination of stains on the wall panels, repair of the kitchen back splash, patchwork on the cabinets, installation of molding inside the pantry door, replacement of the "ceiling/marriage line of the home," repair of the master bathroom vanity, installation of shower door brackets, the leveling of the back stairs, modification of the ceiling moldings, and a safety assessment of the electric meter located at the back stairs. Patrick signed the letter on the same date, indicating his commitment to finalize the purchase of the manufactured home on or before December 21, 2020. Parma Estates LLC and Heartland allege they made the repairs

---

[1] The complaint also named six individual defendants but because the Lagunzads failed to obtain service of the complaint on those defendants, the trial court dismissed the case against them for failure to prosecute.

— as evidenced by service orders — except for a cosmetic change inside the pantry door that was not standard to the home.

{¶ 7} On December 15, 2020, the Lagunzads and Parma Estates LLC executed the purchase agreement for the manufactured home and the lease agreement for lot 120. The purchase agreement disclaims any and all express and implied warranties and states a complaint for a breach of the contract must be commenced within one year of the occurrence of the alleged breach. The lease agreement indicates a lease term of December 15, 2020, through December 31, 2021, in exchange for monthly rent, and at the end of the term, the lease automatically renews on a month-to-month basis. According to the lease, Parma Estates LLC will notify residents with 30-day prior written notice of proposed rent increases. The lease agreement governs the real property known as lot 120 but not the manufactured home. According to the lease agreement, the leased lot "does not have any fixed boundaries or lot lines, except as set forth by the Community, which boundaries can change without notice."

{¶ 8} On November 10, 2021, Patrick sent a letter to Parma Estates notifying the entity about conditions on his premises that he alleged materially affected his family's health and safety. On December 1, 2021, the Lagunzads filed a rental deposit action with the Cleveland Municipal Court and began depositing their rent with the Cleveland Municipal Court Housing Division.

{¶ 9} On April 27, 2022, the Lagunzads sent a letter to Parma Estates stating their premises were in violation of various local codes. Specifically, the

Lagunzads stated the repair work identified in the December 4, 2020 letter was unresolved. The Lagunzads also stated Parma Estates failed to enforce the lease agreement and community rules and, as a result, they sustained damage to their manufactured home and vehicle and received threats to their lives.

{¶ 10} On or about May 19, 2022, Parma Estates LLC and Parma Estates MHP executed an assignment and assumption of lease agreements. Pursuant to that document, Parma Estates LLC conveyed to Parma Estates MHP its interests in all assets related to the property known as Parma Estates, including the Lagunzads' lease agreement. Following that time, Parma Estates LLC had no ownership interests in Parma Estates, was not engaged in the management of the property, and exercised no control over the property.

{¶ 11} On September 30, 2022, Parma Estates MHP issued a written notice to all residents of Parma Estates informing them that due to "operational cost increases" monthly rent payments would increase, effective on November 1, 2022.

{¶ 12} On October 12, 2022, the Lagunzads filed their initial complaint in the Cuyahoga County Court of Common Pleas against Parma Estates LLC and Parma Estates MHP alleging claims of breach of contract, rent abatement, retaliation, and violations of the Ohio Administrative Code. *See* Cuyahoga C.P. No. CV-22-969914.

{¶ 13} During the pendency of the initial lawsuit, on February 10, 2023, Parma Estates LLC and Parma Estates MHP secured Patrick's deposition testimony. Patrick testified that he inspected the manufactured home prior to moving in. Patrick further testified that the deficiencies noted in the December 4, 2020 letter

were present in July 2020 and continued at the time of the deposition. Patrick stated he was told the mold stains and other issues would be corrected. Patrick further testified that the only repairs attempted in his home prior to September 28, 2021, were the correction of a water-pressure issue, an attempt to remove mold stains from the walls, and the placement of a temporary board to correct the "marriage line" in his home.

{¶ 14} Patrick also testified about issues he experienced with Parma Estates neighbors to which Parma Estates was allegedly unresponsive. Specifically, Patrick stated that the Butlers destroyed his grass with their vehicle, attempted to drive through his trailer, damaged his vehicle, and threatened to harm him; Vincent J. Fadenholtz's ("Fadenholtz") dog sometimes escaped his leash and on a single occasion, while on Patrick's driveway, the dog attempted to attack him and scratched his vehicle; and neighbors drove over and destroyed his flower beds, flower containers, and fence and threatened to kill him. Patrick acknowledged that Parma Estates LLC initiated an eviction action against the Butlers.

{¶ 15} Patrick stated that even though he and his neighbors received a written notice of rent increase in September 2022, he believed Parma Estates MHP initiated Patrick's rent increase in retaliation for his filing a rent deposit action with the Housing Division. Patrick further stated that the terms of his lease precluded Parma Estates MHP from increasing his rent payment.

{¶ 16} Patrick testified that Parma Estates MHP notified him in advance that they would correct the unevenness of his back stairs and evaluate the safety of the

utility box at the base of the stairs. Patrick further testified that a Parma Estates MHP employee had removed the stairs and poured new concrete in an attempt to remedy those issues but had not replaced the stairs at the time of the deposition.

{¶ 17} Following Patrick's deposition, Parma Estates LLC and Parma Estates MHP filed motions for summary judgment, and the Lagunzads voluntarily dismissed their initial complaint on February 22, 2023.

{¶ 18} Nearly a year later, on February 15, 2024, the Lagunzads filed the current lawsuit against appellees pursuant to the Ohio Savings Statute, R.C. 2305.19. On June 10, 2024, Parma Estates LLC and Heartland filed a motion for summary judgment, and on June 12, 2024, Parma Estates MHP and ODC Homes filed motions for summary judgment. The Lagunzads opposed the motions, and on July 22, 2024, the trial court granted summary judgment on behalf of the appellees.

{¶ 19} On August 15, 2024, the Lagunzads filed a timely notice of appeal presenting three assignments of error:

> Assignment of Error I: The trial court erred in granting summary judgment for ODC Homes 6 LLC.
>
> Assignment of Error II: The trial court erred in granting summary judgment for Parma Estates MHP LLC.
>
> Assignment of Error III: The trial court erred in granting summary judgment for Parma Estates LLC and Heartland Living LLC.

**Legal Analysis**

**A. Standard of Review**

{¶ 20} Before a trial court grants a motion for summary judgment, pursuant to Civ.R. 56(C), the court must determine that

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶ 21} On a summary judgment motion, the moving party's initial burden is to identify specific facts in the record that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 1996-Ohio-107, ¶ 17. If the moving party does not satisfy this burden, summary judgment is not appropriate. If the moving party meets the burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record that demonstrate the existence of a genuine issue of material fact for trial. *Id.* Where the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.* "[A]ll evidence submitted upon a motion for summary judgment [must] be construed most strongly in favor of the party against whom the motion is made." *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St. 2d 25 (1970), paragraph two of the syllabus.

{¶ 22} An appellate court applies a de novo standard when reviewing a trial

court's decision that granted summary judgment. *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 2017-Ohio-2758, ¶ 11 (8th Dist.).

## B. ODC Homes

{¶ 23} In their first assignment of error, the Lagunzads argue that the trial court erred when it granted summary judgment in favor of ODC Homes. ODC Homes is mentioned twice in the complaint — in the caption and in paragraph two — where it is stated that ODC Homes is the management company for Parma Estates LLC and/or Parma Estates MHP. The Lagunzads' complaint alleges no causes of action against ODC Homes.

{¶ 24} ODC Homes moved for summary judgment and provided in support of its motion the affidavit of Michelle Oppelt ("Oppelt"), the Vice President of property management for Parma Estates MHP. According to the Oppelt affidavit, ODC Homes sells manufactured homes, but did not sell the Lagunzads their manufactured home, and owes no warranties related to the Lagunzads' home. The affidavit further states ODC Homes did not act as Parma Estates MHP's management company at any relevant time. ODC Homes argues it is entitled to summary judgment because there are no genuine issues of material fact relating to this party.

{¶ 25} The Lagunzads filed a brief in opposition but failed to refute the claims raised in ODC's summary judgment motion or the statements raised in Oppelt's affidavit. In their brief in opposition, the Lagunzads argue that ODC Homes is a licensed manufactured home dealer with the same business address as the Parma Estates community. The Lagunzads appear to imply, based upon a State of Ohio

certification, that ODC Homes operates under the fictitious name of Parma Estates and contend that Parma Estates failed to honor its home warranty or to make the necessary repairs to the manufactured home.

{¶ 26} The Lagunzads' complaint makes no allegations against ODC Homes but simply states the entity is the management company for Parma Estates LLC or Parma Estates MHP, which fact ODC Homes rebuts with Oppelt's affidavit. On the face of the complaint, it is clear no cause of action was pled against ODC Homes. The Lagunzads failed to demonstrate any genuine issues of material fact remain to be litigated and, thus, ODC Homes is entitled to judgment as a matter of law.

{¶ 27} The trial court did not err when it granted summary judgment to ODC Homes and, accordingly, the Lagunzads' first assignment of error is overruled.

## C. Parma Estates MHP, Parma Estates LLC, and Heartland

{¶ 28} In their second assignment of error, the Lagunzads contend the trial court erred when it granted summary judgment to Parma Estates MHP, and in their third assignment of error, the Lagunzads argue the trial court erred when it granted summary judgment to Parma Estates LLC and Heartland. For ease of discussion, we will address the second and third assignments of error collectively.

## 1. Breach of Contract

{¶ 29} The Lagunzads contend Parma Estates LLC and Heartland failed to make the necessary repairs to their manufactured home that were conditions of the purchase agreement and failed to honor the home warranty contained in the purchase agreement.

{¶ 30} In their motion for summary judgment, Parma Estates LLC and Heartland argue the purchase agreement excluded any implied warranties, and alternatively, the claim was time-barred pursuant to the terms of the purchase agreement. The Lagunzads contend in their brief in opposition that the repairs were part of the purchase agreement and could not be disclaimed; the Lagunzads do not address whether their breach of contract claim is time-barred.

{¶ 31} The purchase agreement clearly and unambiguously requires breach-of-contract claims to be initiated within one year after the occurrence of the breach:

> Purchaser understands and agrees that if either of us should breach this Agreement the other of us shall have only one year after the occurrence of that breach in which to commence an action for breach of contract.

Purchase agreement, ¶ 16.

{¶ 32} Patrick testified that the alleged items covered by warranty and the required repairs were evident to him when he moved into the manufactured home in July 2020 and when he executed the December 4, 2020 letter that required Parma Estates LLC to remedy the outstanding issues within 90 days. The purchase agreement was executed on December 15, 2020. According to the purchase agreement, the breach-of-contract claim needed to be filed within one year of the alleged breaches. The Lagunzads did not initiate their first complaint until October 12, 2022, well beyond the contractually agreed upon one-year statute of limitations.

{¶ 33} Even if the breach-of-contract claims were not time-barred, the purchase agreement executed by Parma Estates LLC and the Lagunzads did not include any implied warranties. "As a general matter, a seller of goods impliedly

warrants that a good is merchantable and fit for a particular use." *Crenshaw v. Michael J.'s Auto Sales*, 2021-Ohio-1468, ¶ 12 (1st Dist.), citing R.C. 1302.29(B). Pursuant to R.C. 1302.29, implied warranties of merchantability and fitness may be excluded or modified by a writing with conspicuous language. The purchase agreement contains the following language excluding implied and express warranties:

> Purchaser understands that Retailer disclaims and excludes from the transaction all warranty obligations which exceed or exist over and above the legal warranties required by applicable state law including the implied warranty of merchantability and fitness for a particular purpose and further excludes all warranties expressed or implied. . . . There is no expressed warranty on used Mobile/Manufactured Homes while implied warranties on new and/or used Mobile/Manufactured Homes may be required by state law. Retailer will not provide Purchaser with any writing regarding implied warranties.

Purchase agreement, ¶ 12.

{¶ 34} The purchase agreement clearly and unambiguously states that no express or implied warranties are contained in the purchase agreement. Parma Estates LLC and Heartland cannot be liable for a breach of warranties where no warranties were offered.

{¶ 35} For the foregoing reasons, there are no genuine issues of material fact related to the breach-of-contract claim against Parma Estates LLC and Heartland and, therefore, the trial court did not err when it found Parma Estates LLC and Heartland are entitled to summary judgment as a matter of law on the breach of contract allegations.

## 2. R.C. 5321.01 Violations

{¶ 36} The Lagunzads argue that the appellees breached their obligations imposed under R.C. 5321.04 and those violations release the Lagunzads' obligation to pay rent, giving rise to a rent-abatement claim.

{¶ 37} Parma Estates LLC, Heartland, and Parma Estates MHP contend in their motions for summary judgment that (1) they are not liable for any alleged violations that stem from actions taken by other Parma Estates residents and (2) an alleged breach of quiet enjoyment cannot result from the acts of other tenants. Parma Estates LLC, Heartland, and Parma Estates MHP also argue that R.C. 5321.04 applies to landlord-tenant disputes and not issues related to manufactured home park operators.

{¶ 38} Initially, R.C. Ch. 4781 — formerly R.C. Ch. 3733 — governs tenancies in a manufactured home park while R.C. Ch. 5321 governs landlord-tenant relationships. "R.C. Chapter 5321 does not govern the relationship between manufactured home park operators and their tenants." *Schwartz v. McAtee*, 22 Ohio St.3d 14 (1986), paragraph one of syllabus (overruled on other grounds); *see Wood v. Crestwood Assocs., LLC*, 2010-Ohio-1253, ¶ 12 (3d Dist.). The Lagunzads should have premised their R.C. 5321.01 violations on R.C. Ch. 4781 rather than R.C. Ch. 5321, but their failure to do so is not fatal to their claim since the wording of R.C. 4781.38 and 5321.04 are identical, there is limited case law on this issue with regard to manufactured home parks, and the appellees were not prejudiced by the error since they were able to defend against the claim. *Lewis v. Wall*, 2008-Ohio-3387, ¶ 17 (11th Dist.), quoting *Sterling v. Stevens*, 2003-Ohio-5153, ¶ 1-7 (7th Dist.).

**{¶ 39}** A landlord's obligations are delineated under R.C. 5321.04. Part of a landlord's responsibilities is to maintain "all common areas of the premises in a safe and sanitary condition." R.C. 5321.04(A)(3). "The landlord is required to 'take reasonable diligence and care to comply' with the statutory duty to keep the common area safe." *Mayhew v. Massey*, 2017-Ohio-1016, ¶ 48 (7th Dist.), quoting *Robinson v. Bates*, 2006-Ohio-6362, ¶ 23.

> A landlord's violation of the duties imposed by R.C. 5321.04(A) constitutes negligence per se. *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195. However, negligence per se does not mean the same thing as liability per se. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406, 727 N.E.2d 1277 (2000). In addition to negligence per se, "proximate cause for the injuries sustained must be established. Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord." *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1981). A landlord "will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406, 727 N.E.2d 1277 (2000).

*Hanson v. Knoppe*, 2019-Ohio-5393, ¶ 35 (5th Dist.). To demonstrate a breach under R.C. 5321.04, the tenant must show the landlord received notice of the defective condition of the rental premises, the landlord had knowledge of the defect, or the tenant made reasonable but unsuccessful attempts to inform the landlord. *Lloyd v. Roosevelt Props.*, 2018-Ohio-3163, ¶ 16 (8th Dist.), quoting *Eberly v. Irons*, 2007-Ohio-4240, ¶ 52 (5th Dist.), citing *Shroades v. Rental Homes*, 68 Ohio St.2d 20, 25-26 (1981).

**{¶ 40}** Conversely, a landlord has no duty to protect a tenant from the criminal acts of third persons or torts committed by his tenant against another tenant. *Doe v. Flair Corp.*, 129 Ohio App. 3d 739, 746 (8th Dist. 1998), and *Ohio Civ. Rights Comm. v. Akron Metro. Hous. Auth.*, 2008-Ohio-3320, ¶ 20, quoting *Midland Oil Co. v. Thigpen*, 4 F.2d 85, 91 (8th Cir. 1924). Additionally,

> while [a] landlord has some duty to provide secure common areas in an apartment complex, he is not an insurer of the premises against criminal activity. Thus, the duty on the landlord is only to take some reasonable precautions to provide reasonable security.

*Doe* quoting *Carmichael v. Colonial Square Apartments*, 38 Ohio App.3d 131, 132 (10th Dist. 1987).

**{¶ 41}** The complaint vaguely indicates the bases for this cause of action are actions by other tenants that breached the Lagunzads' quiet enjoyment. However, the Lagunzads did not allege the criminal activity of the other tenants occurred in the common areas of the property, and Parma Estates LLC, Heartland, and Parma Estates MHP cannot be liable for property damage caused on the Lagunzads' own property.

**{¶ 42}** Further, "[t]he covenant [of quiet enjoyment] is breached when a landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold." *Presser v. RCP Mayfield, LLC*, 2009-Ohio-3380, ¶ 23 (8th Dist.), citing *Howard v. Simon,* 18 Ohio App.3d 14, 16 (8th Dist. 1984). A breach of the covenant of quiet enjoyment arises from the action or

inaction of a landlord, not another tenant. The Lagunzads' arguments related to the covenant of quiet enjoyment relate to acts by other tenants rather than the appellees.

**{¶ 43}** The trial court did not err when it granted summary judgment on the proposed R.C. 5321.01 violations where no genuine issues of material fact existed and Parma Estates LLC, Heartland, and Parma Estates MHP were entitled to summary judgment as a matter of law on the alleged cause of action.

### 3. Retaliation

**{¶ 44}** The Lagunzads allege Parma Estates MHP increased their rent and threatened to evict them in response to the Lagunzads issuing complaints about building, housing, health, or safety code violations that supposedly materially affected the Lagunzads' health and safety. Parma Estates MHP asserts in its motion for summary judgment that it is authorized to increase rent and the appellants have failed to demonstrate the rent increase was retaliatory.

**{¶ 45}** According to Ohio Administrative Code ("OAC") 4781-12-28(A), a manufactured park operator shall not retaliate against a resident by increasing the resident's rent where "[t]he resident has complained to an appropriate governmental agency of a violation of a building, housing, health, or safety code that is applicable to the premises, and the violation materially affects health and safety . . . ." *See also Laster v. Bowman*, 52 Ohio App.2d 379, 383 (8th Dist. 1977) (a landlord may not retaliate against a tenant who has complained about the landlord to a government agency by raising rent). However, OAC 4781-12-28(A) does not prohibit a park operator from increasing rent to reflect an increase of operational costs. OAC 4781-

12-28(C).  A resident must establish by a preponderance of the evidence that a landlord or manufactured park owner's actions, such as a rent increase, are retaliatory in nature.  *Venetta v. Battle*, 1990 Ohio App. LEXIS 4558, *10 (10th Dist. Oct. 18, 1990).

{¶ 46}  Patrick testified that he and all residents in Parma Estates received notice on September 30, 2022, of a rent increase.  Patrick further testified that Parma Estates MHP increased his rent because of his filing a rent deposit case and his lease agreement does not allow Parma Estates MHP to increase his monthly rent payment:

> Q:  Okay.  And what makes you believe that the increasing in rent was specifically because of the rent deposit case that you had pending?
>
> A:  Because if you have a copy of my lease and you know that my lease never goes up, why would you send me a notice period?  There is no reason to send me a notice.
>
> Q:  Are you aware of anyone else in the community whose rent was raised as well?
>
> A:  I think they sent the notice to almost everybody.
>
> Q:  So almost everybody received a notice that rent was increasing?
>
> A:  To my knowledge, yes.
>
> Q:  But you specifically think that you were specifically targeted for a rent increase?
>
> A:  Yes.
>
> Q:  Even though the rest of the Park also got their rent increased?
>
> A:  Again, their reasoning for raising theirs, I have no idea.  All I know is the reason mine went up is because I filed the paperwork that I did and they tried to raise it.

Patrick Lagunzad, tr. 143-144.

{¶ 47} Patrick's affidavit attached to his brief in opposition to the appellees' motions for summary judgment states that rent increase letters were also sent to Charles on May 27, 2021, and October 27, 2023, and Patrick attached copies of the letters to his affidavit. Both letters indicate implementation of the rent increase due to increased business expenses.

{¶ 48} The May 2021 letter was issued when Parma Estates LLC, not Parma Estates MHP, managed the manufactured home park. Thus, the May 2021 letter could not show retaliation by Parma Estates MHP. Patrick's affidavit states the October 2023 rent increase letter was delivered by Parma Estates MHP; Patrick's affidavit fails to state the rent increase was imposed in retaliation for Patrick filing a rent deposit case. A review of the Lagunzads' lease agreement shows Parma Estates MHP may increase the rent with a 30-day prior written notice. And in accordance with OAC 4781-12-28, Parma Estates MHP is permitted to increase rents in response to increasing operating costs. The Oppelt affidavit attests that all Parma Estate residents received notice of a rent increase on September 30, 2022 — that was effective on November 1, 2022 — and the rent increase was imposed due to Parma Estates MHP's increased operational costs. Patrick's baseless allegations are insufficient to establish a genuine issue of material fact on the issue of retaliation.

{¶ 49} For the foregoing reasons, the trial court did not err when it found as a matter of law that Parma Estates MHP was entitled to summary judgment on the claim of retaliation.

## 4. Dog Attack

{¶ 50} The Lagunzads allege Parma Estates MHP is strictly liable for injuries and property damage Patrick sustained from neighbor Fadenholtz's dog.

{¶ 51} R.C. 955.28 imposes strict liability on the owner, keeper, or harborer of a dog for any injury, death, or loss to person or property that is caused by the dog. R.C. 955.28(B). To establish strict liability, the trier of fact must establish the defendant is the owner, keeper, or harborer of the dog; the dog's actions were the proximate cause of the damage; and damages. *Weisman v. Wasserman*, 2018-Ohio-290, ¶ 9 (8th Dist.). "A 'harborer' has been consistently defined by Ohio courts as a person who 'has possession and control of the premises where the dog lives and silently acquiesces to the dog's presence.'" *Williams v. Buchner*, 2023-Ohio-1293, ¶ 11 (8th Dist.), quoting *Ward v. Humble*, 2022-Ohio-3258, ¶ 13 (2d Dist.), citing *Vallejo v. Haynes*, 2018-Ohio-4623, ¶ 1 (10th Dist.). A landlord's liability as a harborer of a dog extends only to incidents in common areas or areas shared by both the landlord and tenant. *Weisman* at ¶ 10, quoting *Burgess v. Tackas*, 125 Ohio App.3d 294, 297 (8th Dist. 1998), citing *Thompson v. Irwin*, 1997 Ohio App. LEXIS 4728, *7-8 (12th Dist. Oct. 27, 1997).

{¶ 52} Patrick testified that he had no prior incidents with the Fadenholtz's dog and the dog attempted to attack Patrick and scratched his vehicle while the dog was on Patrick's driveway. Parma Estates MHP asserted, through the Oppelt affidavit, that Parma Estates MHP does not physically possess any of the common areas on the resident's property once the resident executes a lease. Because the

alleged incident between Patrick and Fadenholtz's dog occurred in the Lagunzads' driveway, not a common area, no liability for the incident could attach to Parma Estates MHP.

{¶ 53} For the foregoing reasons, the trial court did not err when it found there were no genuine issues of material fact and granted Parma Estates MHP summary judgment as a matter of law on the allegations related to Fadenholtz's dog.

## 5. Misrepresentation and/or Fraud

{¶ 54} The Lagunzads allege that Parma Estates LLC falsely and fraudulently stated that Parma Estates was a senior community limited to residents aged 55 and older; that "brand new homes" were for sale; and residents would have access to cable, internet, and phone services immediately upon moving into the manufactured home park. The Lagunzads contend they relied on Jackie Martino Roff's ("Roff") July 13, 2020 letter — attached to Patrick's affidavit — that stated Parma Estates is a 55 and older community. Roff was the community manager for Parma Estates.

{¶ 55} Parma Estates LLC and Heartland assert in their motion for summary judgment that the lease agreement states the Lagunzads did not rely on any written or oral representations as an inducement to execute the document.

{¶ 56} To establish fraud or misrepresentation, the Lagunzads must establish the following elements:

> (1) a representation of fact (or where there is a duty to disclose, concealment of a fact); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon

the misrepresentation (or concealment); and (6) resulting injury proximately caused by the reliance.

*Malek v. Eresearch Tech., Inc.*, 2022-Ohio-3330, ¶ 24 (8th Dist.), citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984).

**{¶ 57}** The lease agreement executed by the Lagunzads and Parma Estates LLC for the lease of lot 120 specifically states, in relevant part:

> 46. ENTIRE HOMESITE LEASE: The Homesite Lease, Manufactured Home Residential Lease (if applicable), the Rental Application, the Community Rules, any Schedule of Other Monthly Fees and any addendums provided by the Landlord, constitutes the entire agreement between the parties.
>
> > a. NO OTHER REPRESENTATIONS: Resident certifies that no other representations, either written or oral, were made by Landlord or relied on by Resident as an inducement for the execution of, or as consideration for, this Lease.
> >
> > b. NO AMENDMENTS: Resident acknowledges receipt of a copy of this Homesite Lease and agrees that such shall not be modified or amended except as expressly set forth in writing and executed by the parties.

The lease agreement makes no mention of Parma Estates being a 55 and older community nor does the document state that only new homes were offered for sale. According to the lease agreement, no additional representations, oral or written, induced the Lagunzads' execution of the agreement. Thus, there were no genuine issues of material fact on the claim of misrepresentation or fraud.

**{¶ 58}** For the foregoing reasons, the trial court did not err when it found Parma Estates LLC and Heartland were entitled to summary judgment on the Lagunzads' claims of misrepresentation or fraud.

## 6. Violation of Consumer Sales Practices Act ("CSPA")

{¶ 59} Parma Estates LLC's summary judgment motion contends that the Lagunzads' CSPA claim is barred by the statute of limitations and lacks merit. The Lagunzads allege Parma Estates LLC violated the CSPA when it sold them a manufactured home on December 15, 2020, with "a length of 960 square feet" when OAC 4781-12-08 requires a manufactured home to be placed on a lot measuring between 1,250 and 3,600 square feet. The Lagunzads further claim that they seek recission and/or revocation of the purchase agreement and, therefore, their CSPA claim is governed by the discovery exception to the two-year statute of limitations.

{¶ 60} The appellants' alleged violation of OAC 4781-12-08 is meritless. As stated previously, the Lagunzads assert their manufactured home has a length of 960 square feet but is required under OAC 4781-12-08(C) to measure not less than 3,600 square feet. This argument is baseless because OAC 4781-12-08(C) references the lot size rather than the square footage of the manufactured home.

{¶ 61} The Lagunzads fail to identify genuine issues of material fact that evidence a valid CSPA violation and, thus, the trial court did not err when it granted Parma Estates LLC and Heartland summary judgment on these allegations.

## 7. Slander

{¶ 62} Parma Estates MHP asserted in its summary judgment that the appellants provided no evidence in support of their slander claim. The Lagunzads

allege that Parma Estates MHP's employees, in the scope of their employment, falsely stated that Patrick "broke and entered" the Parma Estates laundry room.

{¶ 63} In Ohio, an employer is not liable for an employee's intentional, malicious torts that are performed outside his scope of employment. *Lamson v. Firestone Tire & Rubber Co.*, 1991 Ohio App. LEXIS 1010, *8 (9th Dist. Mar. 13, 1991), citing *Taylor v. Doctors Hosp.* 21 Ohio App. 3d 154, 156 (10th Dist. 1985). "Ohio courts have often held that 'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.'" *Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524, ¶ 80 (2d Dist.), quoting *Jackson v. McDonald*, 144 Ohio App.3d 301, 307 (5th Dist. 2001).

{¶ 64} Here, the Lagunzads failed to set forth specific facts showing how Parma Estates MHP's maintenance worker and regional property manager made statements about Patrick within the scope of their employment with Parma Estates MHP. Thus, the trial court did not err when it found there were no genuine issues of material fact in support of the Lagunzads' slander claim and granted Parma Estates MHP summary judgment on that issue.

## 8. Destruction of Personal Property

{¶ 65} The Lagunzads claim Parma Estates MHP was responsible for damage to their personal property. Specifically, the Lagunzads allege that (1) neighbors willfully and maliciously destroyed their flowerpots by driving over them with a vehicle, (2) a Parma Estates MHP employee, in the scope of his employment, willfully and maliciously removed the Lagunzads' back door and steps in July 2023

and failed to return them, (3) on September 11, 2023, employees of Parma Estates MHP, in the scope of their employment, left building materials in the Lagunzads' yard that destroyed the Lagunzads' mower, and (4) on October 10, 2023, a tree branch on land owned by Parma Estates MHP fell and broke the windshield on the Lagunzads' vehicle.

{¶ 66} In support of these allegations, Patrick attested that he notified Parma Estates about the property damage to his flowerpots, car, and lawn mower as well as about the threat he and Charles received from neighbors. Patrick further attested that he ran over a wire with his lawn mower that destroyed his lawn mower, and the wire was not present the prior week when he cut his lawn. Patrick's affidavit also states that a Parma Estates employee removed his back stairs and replaced them with "broken stairs too wide for the pad." Lastly, Patrick attested that he notified Parma Estates on numerous occasions that a tree branch in a common area "had snapped."

**(a) Flowerpots**

{¶ 67} We previously found "a landlord has no duty to protect a tenant from the criminal acts of third persons or torts committed by his tenant against another tenant." *Doe*, 129 Ohio App.3d 739, at 746, and *Ohio Civ. Rights Comm.*, 2008-Ohio-3320, at ¶ 20, quoting *Midland Oil Co. v. Thigpen*, 4 F.2d 85, 91 (8th Cir. 1924). Thus, there is no merit to the Lagunzads' allegations regarding the destruction of their flowerpots by their neighbors, and the trial court properly granted summary judgment on this issue.

**(b) Back Door and Steps**

{¶ 68} Parma Estates MHP argues there is no viable claim to assert that its employee willfully and maliciously removed the Lagunzads' back door and steps and failed to return them.

{¶ 69} Parma Estates MHP presented the following statements in regard to the appellants' back door and steps:

> Parma Estates MHP removed Plaintiffs['] back trailer stairs in order to respond to a safety hazard request by Plaintiffs. Parma Estates MHP regularly notified Plaintiffs of updates on the process of fixing this safety hazard. The stairs were required to be move[d] in order to pour concrete in place of the electrical hazard.

Oppelt affidavit, ¶ 17.

{¶ 70} Patrick stated during his deposition that Parma Estates MHP notified him in advance that employees would remove his back stairs and pour new concrete to address the issue with his stairs and the adjacent utility box. Patrick also testified that he and Charles had been unable to use the back door because of improper installation. In his affidavit, Patrick attests that his back door and steps were removed by a Parma Estates employee and have not been returned and the stairs were replaced with cinder blocks and "broken stairs too wide for the pad."

{¶ 71} Viewing the evidence most strongly in favor of the Lagunzads, there is a genuine issue of material fact regarding Parma Estates MHP's alleged removal of the appellants' back door and steps. Thus, the trial court erred when it granted Parma Estates MHP's summary judgment on the issue of the removal of the Lagunzads' back door and steps.

**(c) Lawn Mower**

{¶ 72} Parma Estates argues there is no basis for the Lagunzads' allegation that their employee left a piece of wire in the Lagunzads' yard that damaged their lawnmower.

{¶ 73} Parma Estates MHP, through the Oppelt affidavit, attests it has no knowledge of construction debris left on the Lagunzads' property; the Lagunzads and all residents are responsible for the care of their own lawns; and it does not know how Patrick's lawn mower was destroyed. Patrick's affidavit states he ran over a wire with his lawn mower that damaged the mower and the wire was not present the prior week.

{¶ 74} Absent any evidence to demonstrate Parma Estates MHP placed the wire on the Lagunzads' or had knowledge or should have known about the presence of the wire, the trial court did not err when it granted summary judgment to Parma Estates MHP on this issue.

**(d) Tree Branch**

{¶ 75} R.C. 4781.38(A)(2) states a manufactured park operator shall "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition" while R.C. 4781.38(A)(3) states a park operator will "[k]eep all common areas of the premises in a safe and sanitary condition." Violation of R.C. 4781.38(A) constitutes negligence per se, but the tenant must establish proximate cause and damages and show that the park operator had notice of the defective condition, knew of the condition, or the tenant made

reasonable attempts, although unsuccessfully, to notify the park operator. *See Goodman v. Dan Rich, LLC*, 2021-Ohio-690, ¶ 17 (8th Dist.), citing *Robinson v. Bates*, 2006-Ohio-6362, ¶ 23, citing *Sikora v. Wenzel*, 2000-Ohio-406, ¶ 15; *Shroades v. Rental Homes*, 68 Ohio St.2d 20, 25-26 (1981).

{¶ 76} Per Patrick's affidavit, he "notified Parma Estates on numerous occasions about the fact that a tree branch in a common area owned by Parma Estates had snapped before the damage to [his] car . . ." occurred. The Lagunzads presented specific facts that demonstrated the existence of a genuine issue of material fact for trial: whether Parma Estates had notice of a broken tree branch located in a common area that allegedly caused damage to Patrick's vehicle. Construing the evidence most strongly in favor of the Lagunzads, the trial court erred when it granted Parma Estates MHP's summary judgment on this issue — the alleged property damage caused by a branch falling on Patrick's vehicle.

{¶ 77} Thus, in regard to the Lagunzads' second assignment of error — whether the trial court erred when it granted Parma Estates MHP summary judgment — we find the trial court erred in part and we reverse the trial court's grant of summary judgment to Parma Estates MHP on (1) the alleged removal of the Lagunzads' back door and steps and (2) the alleged damage to Patrick's vehicle caused by a tree branch. We affirm the trial court's grant of summary judgment to Parma Estates MHP on all other issues. As to the Lagunzads' third assignment of error, we affirm the trial court's grant of summary judgment to Parma Estates LLC and Heartland.

**{¶ 78}** Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

It is ordered that appellants and appellees split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)